UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:13-CR-152 |
| | ) | |
| BELA GABOR KOSA II | ) | |

**MEMORANDUM AND ORDER**

In May and June 2020, this Court denied the defendant's *pro se* motions for home confinement or compassionate release. [Docs. 52, 56]. To the extent those motions were based on 18 U.S.C. § 3582(c)(1)(A)(i), they were denied due to the defendant's failure to exhaust his administrative remedies.

Now before the Court is the defendant's second renewed *pro se* motion for compassionate release. [Doc. 58]. The United States has responded in opposition to the motion [doc. 60], and Federal Defender Services of Eastern Tennessee ("FDSET") has filed a reply on the defendant's behalf. [Doc. 66].[1]

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be denied.

**I.    BACKGROUND**

In January 2015, this Court imposed a sentence of 180 months' imprisonment, to be followed by a lifetime of supervised release, for the crime of distribution of child pornography. In so doing, the Court accepted the parties' Federal Rule of Civil Procedure

---

[1] Also pending is the defendant's *pro se* "Request for Abeyance Pending Intervention by Federal Defender Services of Eastern Tennessee." [Doc. 63]. That filing was rendered moot by FDSET's reply brief.

11(c)(1)(C) plea agreement. [Doc. 25]. For obvious reasons, among the special conditions of the defendant's supervised release is a ban on possessing or using any computer or other electronic device with internet accessibility without approval of the probation officer. [Doc. 47].

The defendant is presently housed at FCI Oakdale I with a projected release date of September 26, 2026. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 14, 2020). He now moves for compassionate release due to the COVID-19 pandemic, obesity, autoimmune disease, traumatic brain injury, rheumatism, gout, dental issues, chronic dermatitis, and "documented medical traits of hypertension, diabetes, stroke, cancer and immunodeficiency throughout his entire natural living family[.]" [Doc. 58, p. 2, 4].

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i).  Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant.  *See* 18 U.S.C. § 3582(c)(1)(A) (2017).  The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf.  *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes.  District courts in this circuit have previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but, as of November 20, 2020, are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP).  *See United States v. Jones*, ___ F.3d ___, 2020 WL 6817488, at *7 (6th Cir. Nov. 20, 2020) (Guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release.").[2]  "District courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Id.* at 11.

### A. Exhaustion

The United States concedes that the defendant has previously submitted a compassionate release request to the BOP, and that more than 30 days have passed since

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

the request was received by the warden. [Doc. 60, p. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant (age 35) cites the COVID-19 pandemic, obesity, autoimmune disease, traumatic brain injury, rheumatism, gout, dental issues, chronic dermatitis, and "documented medical traits of hypertension, diabetes, stroke, cancer and immunodeficiency throughout his entire natural living family[.]" Consistent with § 3582 and the Sixth Circuit's directive, this Court has considered the defendant's arguments and the broader facts of this case in light of the pertinent § 3553(a) factors. Pursuant to 18 U.S.C. § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B) to afford adequate deterrence to criminal conduct;
>
>   (C) to protect the public from further crimes of the defendant; and
>
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).[3]

---

[3] The Court has also reviewed the letters of support filed by, or on behalf of, the defendant. [Docs. 53, 57, 58].

At the defendant's prison, there are currently two inmates and 22 staff positive for COVID-19, with 225 inmates and 21 staff having recovered, and seven deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 14, 2020). These numbers are serious, but the Court also notes that outside the prison setting our nation is presently experiencing a "surge upon a surge" in terms of COVID diagnoses, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

BOP medical records document the defendant's complaints of "stabbing" and "major" pain in his extremities, for which the BOP has prescribed medication. [Doc. 58, ex. C]. A 2009 motor vehicle accident and a prior reconstruction of the right knee are noted. [*Id.*]. Unspecified cellulitis was diagnosed in 2017, for which the BOP prescribed medication. [*Id.*]. Neuralgia in the feet has also been noted. [*Id.*]. There are occasional complaints of back pain, although on one occasion the medical provider described the defendant as "walking and laughing as if he is in no pain." [*Id.*].

At the time of the Presentence Investigation Report ("PSR") in this case, the defendant was 73 inches tall and weighed 320 pounds. [Doc. 36, ¶ 53]. In 2017, a BOP

6

physician noted "[t]he need to actively participate in a weight loss program." [Doc. 58, ex. C]. The Court will therefore presume, without deciding, that the defendant is currently obese. Lastly, the defendant has submitted medical records from 1996 through 1998 purportedly "related to acquired hemophilia." [Doc. 58, supplemental exs.]. A corticosteroid was prescribed but these records contain no discernable diagnosis other than one made by a family member in an email. [*Id.*].

Of the medical conditions which could even arguably be documented by the instant record, obesity is considered to present an increased risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 14, 2020). Additionally, the BOP's SENTRY Report shows that the defendant is categorized as Care Level 2. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Dec. 14, 2020).

Turning to the nature and circumstances of the instant offense and the defendant's history and characteristics, in this case the defendant admittedly distributed five pornographic images of naked pre-pubescent children being subjected to sexual contact or sexual posing. [Doc. 36, ¶¶ 11-16]. Upon execution of a search warrant, the defendant

7

was in possession of 600 or more still images and 12 videos of child pornography. [*Id.*, ¶ 17]. The defendant had no prior criminal history, [*id.*, ¶¶ 42-47], but his offense of conviction was unquestionably serious, as child pornography inflicts lasting devastation on those captured in its images.

To the PSR writer, the defendant described his health as "fair." [*Id.*, ¶ 53]. He reported constant pain resulting from the 2009 accident. [*Id.*]. The defendant was at that time not taking any prescription medication nor was he under the care of a doctor. [*Id.*]. There is no reported history of substance abuse. [*Id.*, ¶ 56].

The SENTRY Report shows that the defendant has participated in a significant amount of vocational and educational programming. His BOP security classification is "Low." For these things, he is commended.

The BOP also scores the defendant as having a low risk of recidivism. Defense counsel states that his client has been "exemplary" and "close to perfect" while in BOP custody. [Doc. 66, p. 10-11]. These are assessments with which the Court disagrees.

As mentioned above, a special condition of the defendant's post-incarceration supervised release is a ban on possessing or using any computer or other electronic device with internet accessibility without approval of the probation officer. That special condition is regularly imposed by this Court to limit the risk of recidivism in child pornography cases. In a similar vein, the SENTRY Report reflects that the defendant is presently "not allowed to use computers."

Disappointingly, however, SENTRY lists three disciplinary sanctions since 2018, each involving deceptive conduct by the defendant relating to communications and/or

8

electronic devices. In November 2018, the defendant was sanctioned for "having the iPod with movies." He was disciplined again in March 2019 for "mail abuse, disrupt monitoring" and giving or accepting money without authorization. In April 2019, he was sanctioned for possessing a cell phone.

To be clear, there is no indication that any of this misconduct involved child pornography. That, however, is not the point. When released from prison, this defendant will be required not to engage in any unapproved activity involving electronic devices or the internet to ensure that he does not receive, distribute, or possess child pornography. Yet, thrice in the last two years he has acted deceptively—specifically, to avoid detection—regarding communication and/or electronic devices. Because of that misconduct, the Court is not at all confident that this defendant has been sufficiently punished or deterred such that he will comply with his conditions of supervision upon release.

The Court has considered the relevant § 3553(a) factors, the facts of this case, the defendant's history and characteristics, and the arguments raised in the instant motion. The defendant has minimal criminal history and has engaged in some rehabilitative conduct while imprisoned. Conversely, he has not proven medical conditions of the severity alleged. Even if he had, that issue would be outweighed by his misconduct while incarcerated and the almost 70 months of actual time remaining on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Further, the defendant's purported health conditions did not keep him from committing the instant child pornography offense.

9

The substantial sentence reduction requested in this case would not reflect the seriousness of the defendant's crime, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant. The Court therefore does not find extraordinary and compelling reasons justifying compassionate release.

### III.  CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc. 58] is **DENIED**.  His motion for abeyance [doc. 63] is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge